FILED
OCT 30 2007
OCT. 30, 2007
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MARLAINA EASTON, )
         Plaintiff, )
v. )   07CV 6127
          )   JUDGE DARRAH
COLLEGE OF LAKE COUNTY, )   MAGISTRATE JUDGE BROWN
Dr. Jean Kartje and Board of Trustees )
Of the College of Lake County, )
          )   Complaint         JH/
          )
          )   Jury Demanded
         Defendants. )

## I. JURISDICTION

1. This is an action seeking money damages and other relief for discrimination based upon race, national origin, disability and for retaliation.

2. The jurisdiction of this Court is invoked pursuant to the Constitution of the United States and 42 U.S.C. §1983, 42 U.S.C. §1981, 42 U.S.C. §2000e, et seq., 42 U.S.C. §12001 et seq.

3. The rights, privileges and immunities sought herein to be redressed are those secured by the equal protection and due process clauses of the Fourteenth Amendment of the United States Constitution, 42 U.S.C. §1981 and 1983 and provisions against racial discrimination pursuant to Title VII of the Civil Rights Act of 1964.

4. Plaintiff also invokes this Court's pendant jurisdiction of her claim pursuant to Illinois State law. More specifically, Plaintiff alleges that the Defendants have violated her rights to due process and equal protection as guaranteed her by the Illinois State Constitution. It is further claimed that Defendants have violated 775 ILCS 5/1-101 et seq.

5. Plaintiff has exhausted her administrative remedy.

## II. PARTIES

1. Plaintiff, MARLAINA EASTON, ("Marlaina") is an Afro-American/Hispanic female, whose national origin is Puerto Rico and who, at all times relevant hereto, suffered from Multiple Sclerosis ("MS"). She is a United States citizen and resides in the State of Illinois.

2. Marlaina has been employed as an English professor with the College of Lake County ("College") since June 2001.

3. The College is comprised of a faculty and students from primarily Caucasian upper middle class backgrounds.

4. Defendant, ("College"), is a state owned and operated college in Grayslake, Illinois.

5. Defendant, Dr. Jean Kartje, ("Dean"), on or about the time complained of, was the Dean of Communication Arts at the College and was the direct supervisor of Marlaina.

6. Defendant, Board of Trustees, College of Lake County ("Board"), is the governing body of the College.

## III. FACTS

7. On or about 2001, Marlaina was hired by the College as an English Professor in the Communication Arts Division.

8. Between 2001 and 2003, the Dean of Communication Arts was Dr. Sandria Rodriguez ("Sandria"), who had hired Marlaina.

9. During the period between 2001 and 2003, Marlaina had excellent evaluations, peer reviews and student evaluations, and was recognized for her substantial efforts in working

with Developmental students of color and students with disabilities.

10. Marlaina, during this period, worked with faculty members to improve their own classes concerning these students and taught summer classes where she was able to teach and influence such students.

11. During this period, Marlaina, notwithstanding her MS disability, which she suffered from since childhood, was able to function, as a productive and energetic member of the college teaching community.

12. During this period, Marlaina was able to keep the effects of her MS illness under control and at no time exceeded the permitted sick or absent days allowed under her contract.

13. During this period, Marlaina was on a tenure track which she was scheduled to achieve during the year 2004.

14. On or about August 2004, Defendant, Dean, was employed by the College as Dean of the Communications Arts Division and as such was placed in direct supervisory and administrative control of Marlaina.

15. During the period between August 2004 and July 2006, when Defendant, Dean was terminated as an employee of the College, said Dean engaged in the following acts of harassment and discrimination against Marlaina without any cause or justification:

   a. She docked Marlaina's pay without cause or justification for a justifiable absence while allowing white, non-disabled teachers in her division to have absences without docking their pay.

   b. She constantly accused Marlaina of excessive absenteeism, even though Marlaina's absent days were not excessive by any standards of the College or

Marlaina's contract with the College.

c. She denied Marlaina a column movement and reimbursement for her fall PhD classes on the unfounded representation that Marlaina delivered her paperwork to her too slowly, while white, non-disabled teachers in her department had not been unreasonably denied such benefits.

d. Even though she conducted observation meetings of Marlaina's Developmental English classes, she refused to communicate her observations of Marlaina's performance in those classes to Marlaina as required, while white, non-disabled teachers in her department were not similarly ignored.

e. When Marlaina expressed discomfort to the Dean and the unreasonable manner in which she was being treated, the Dean stated "you are about as comfortable as you should be." And that "you are the type of teacher who remains a part-timer and is not tenured." And that "you are an excellent teacher but you don't fit into the College of Lake County Community." She further falsely accused Marlaina of not being an active member of the College community.

f. She publicly posted a confidential memo wherein the above stated matters were discussed in an obvious attempt to label and stigmatize Marlaina as a "problem" teacher.

g. She required Marlaina to notify her if Marlaina was going to be out of her office for more than 15 minutes, while white, non-disabled teachers in her department had no such restrictions.

    h.    She mandated multiple meetings with Marlaina to "check up" on Marlaina, while white, non-disabled teachers in her department were not subject to such scrutiny.

    i.    She chastised Marlaina about her absence due to MS and told Marlaina that she of all people has no right to require her students to comply with an attendance policy because she has an illness that makes her absent "all of the time".

    j.    She wrote memos to the College administration falsely representing the number of Marlaina's absences.

    k.    On the basis of said false absenteeism reported to the College Vice President and Human Resource Director, she restricted Marlaina's ability to teach during the summer and Marlaina's ability to teach Developmental Courses by confining her teaching to the internet where she was not allowed to have personal contact with students, where no such false reports were made about white, non-disabled teachers in her department, and no such restrictions were imposed.

    l.    Early in her reign as Dean, she told Marlaina that the student make up of the Developmental students, predominately students of color and with disabilities, were not worthy of her efforts or of a full-time instructor.

16. Based upon the disparate treatment and upon the derogatory comments made by Defendant Dean, relative to Marlaina's disability and negative attitude towards disabled persons and persons of color, Marlaina reasonably believes that Defendant Dean discriminated against her because she was non-Caucasian and disabled.

5

17. On numerous occasions between August 2003 and July 2006, Marlaina reported the outrageous and discriminating conduct of Defendant Dean to the Defendant College, by informing its Board, its Vice President and its Head of Human Resources, but no action was taken to eliminate said conduct.

18. After Marlaina reported said conduct, the Dean's treatment of Marlaina, progressively worsened in apparent retaliation from Marlaina having made such complaints.

19. Between August 2004 and 2006 as a direct and proximate result of the outrageous and discriminatory conduct of Defendant Dean, and the failure of Defendant College to control said Defendant Dean, Marlaina's medical condition deteriorated.

20. During this period, Marlaina's disability began to manifest the following symptoms:

    A. She suffered from diagnosed bouts of anxiety which exacerbated her MS disability, for which she was prescribed medication.

    B. She suffered numerous physical symptoms, including tightening sensations in her chest, canker sores in her mouth, inability to hold food down, rapid weight loss, general numbness in her body, visual impairment including loss of peripheral vision, and a loss in some of her hearing.

21. On or about August 2006, Marlaina was forced, by reason of worsening medical condition and upon the advice and certifications of her physician, to take a one year medical leave of absence.

22. Defendant Dean's employment was terminated from the College in July, 2007.

23. In July 2007, Marlaina returned to her regular employment with the College, free from the outrageous and unreasonable discrimination and harassment of Defendant Dean, and

has, since said return, not suffered any of the symptoms outlined above.

24. On August 1, 2006, Marlaina filed a Complaint with the Equal Employment Opportunity Commission alleging that the College discriminated against her because of her race, national origin and disability and that it retaliated against her.

25. On August 3, 2007, Marlaina received an Equal Employment Opportunity Commission notice of her right to sue and commenced this action with ninety (90) days thereof.

26. At all times, the Defendants Dean and College, its officers, agents and employees, adopted a policy of violating Marlaina's rights through their willful and wrongful harassment, discrimination, retaliation and failure to act to prevent further ongoing acts of said conduct after notification.

27. As a result of Defendants' acts, Marlaina suffered economic and other losses and has suffered extreme humiliation, embarrassment and mental distress.

## VIOLATIONS OF LAW

### COUNT I

28. Plaintiff realleges Paragraphs 7 through 27 as and for this Paragraph 28.

29. The actions of Defendant, Dean, in punishing, humiliating, harassing and depriving Plaintiff of earned employment benefits and opportunity based upon false representations to College officials, while making disparaging comments relative to her disability, and while treating white, non-disabled teachers in a totally opposite manner, was done with malice and without any justification whatsoever.

30. This conduct constituted discrimination based upon race, national origin, disability and retaliation, and as such, denied Plaintiff equal protection and due process of the U.S. and

State Constitutions and the Federal and State laws set forth herein.

31. As a result of Defendant Dean's action, Plaintiff suffered economic and other losses including extreme humiliation, embarrassment and mental distress which worsened her disability resulting in her being unable to engage in her profession and becoming seriously ill.

WHEREFORE, Plaintiff demands judgment against Defendant Dean as follows:

A. Awarding Plaintiff damages in excess of $50,000.00 for compensation and in excess of $50,000.00 for punitive damages;

B. Awarding Plaintiff reasonable attorney's fees and costs of this action; and

C. For such relief as this Court deems just and reasonable.

## COUNT II

32. Plaintiff realleges Paragraphs 7 through 31 as and for this Paragraph 32.

33. The failure of the College and its Board to control, terminate and otherwise prevent the blatant and discriminatory conduct of its Dean from damaging one of its finest teachers after having been placed on notice of such conduct, constitutes the adoption, ratification, and approval of such discriminatory acts as a custom and policy of the College and its governing Board, and it renders the College and its Board fully accountable to Plaintiff for denial of Plaintiff's equal protection and due process under the U.S. and State Constitutions and Federal and State laws as set forth herein.

WHEREFORE, Plaintiff demands judgment against Defendant Dean as follows:

A. Awarding Plaintiff damages in excess of $50,000.00 for compensation and in

excess of $50,000.00 for punitive damages;

B. Awarding Plaintiff reasonable attorney's fees and costs of this action; and

C. For such relief as this Court deems just and reasonable.

Respectfully submitted,

*Robert V. Gildo*

Robert V. Gildo, on behalf of
Marlaina Easton

Robert V. Gildo
ARDC #: 0956252
120 North Hale, 3rd Floor
Wheaton, Illinois 60187
(630) 462-7979 / fax (462-8067)

## VERIFICATION

The undersigned doth swear and affirm that the foregoing pled facts and circumstances are true and correct to the best of his own personal knowledge, save where pled upon information and belief.

_____
Robert V. Gildo
Attorney for Marlaina Easton

Dated: October 30th, 2007

Subscribed and Sworn to
Before me this 30th day of October 2007.

_____
Notary Public

OFFICIAL SEAL
ANNIE WALKER-BRIGHT
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:04/01/09