**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

MARLAINA EASTON,

      Plaintiff,

      v.                                      Case No. 07 CV 6127
                                           Judge John W. Darrah

COLLEGE OF LAKE COUNTY,                   Courtroom 1203
Dr. Jean Kartje and Board of Trustees     Magistrate Geraldine Soat Brown
of the College of Lake County,            Courtroom 1812

      Defendants.

**DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES
TO COMPLAINT AND SUPPLEMENTAL AMENDMENT
TO PLAINTIFF'S COMPLAINT[1]**

      Defendants, College of Lake County ("College"), Dr. Jean Kartje ("Dr. Kartje") and Board

of Trustees of the College of Lake County ("Board") (the College, Dr. Kartje and the Board

collectively referred to as "Defendants"), by their attorneys, as their Answer and Affirmative

Defenses to the Complaint and Supplemental Amendment to Plaintiff's Complaint, state as follows:

**I.  JURISDICTION**

      1.      This is an action seeking money damages and other relief for discrimination based

---

    [1] In its Memorandum and Order dated July 10, 2008 ("Order"), the Court granted in part and denied in part Defendants' Motion to Dismiss.  Plaintiff was given thirty days to file an Amended Complaint. Instead of filing an Amended Complaint that omitted allegations/claims that had been dismissed, Plaintiff filed a Supplemental Amendment to Plaintiff's Complaint that consisted of four paragraphs. Plaintiff has not filed a stand alone pleading (or any pleading) that reflects the rulings in the Order.  The Order dismissed the claims arising under § 1981, retaliation under § 1983, Title VII and ADA claims against Dr. Kartje (with leave to replead consistent with Rule 11), Title VII and the ADA claims to the extent they are based on events that arose 300 days before the EEOC Charge was filed and claims under the Illinois Human Rights Act, 775 ILCS 5/1-101, *et seq.*

upon race, national origin, disability and for retaliation.

   **Answer:**      Defendants admit that in this action plaintiff seeks damages and other

relief for discrimination based upon race, national origin, disability and retaliation.  Defendants deny

that they committed any act giving rise to such claims or relief and deny the remaining allegations

in paragraph 1.

   2.      The jurisdiction of this court is invoked pursuant to the Constitution of the United

States and 42 U.S.C. § 1983, 42 U.S.C. § 1981, 42 U.S.C. § 2000e et seq., 42 U.S.C. § 12001 et seq.

   **Answer:**      Defendants admit that this court has jurisdiction over these claims.

Defendants deny that they committed any act giving rise to jurisdiction and deny the remaining

allegations in paragraph 2.  Further answering, Defendants state that the claims under 42 U.S.C.

§ 1981 were dismissed as was the retaliation claim under § 1983 and claims under 42 U.S.C. § 2000e

*et seq*. and §12101 *et seq.* that arose more than 300 days before the Charge of Discrimination was

filed.

   3.      The rights, privileges and immunities sought herein to be redressed are those

secured by the equal protection and due process clauses of the Fourteenth Amendment of the United

States Constitution, 42 U.S.C. § 1981 and 1983 and provisions against racial discrimination pursuant

to Title VII of the Civil Rights Act of 1964.

   **Answer:**      Defendants admit that these statutes provide certain rights and remedies.

Defendants deny that they violated those statutes and deny the remaining allegations of paragraph

3.  Further answering, Defendants state that the claims under 42 U.S.C. § 1981 and retaliation under

§ 1983 were dismissed .

   4.      Plaintiff also invokes this Court's pendant jurisdiction of her claim pursuant to

Illinois State law.  More specifically, Plaintiff alleges that the Defendants have violated her rights to due process and equal protection as guaranteed her by the Illinois State Constitution.  It is further claimed that Defendants have violated 775 ILCS 5/1-101 et seq.

**Answer:**        Defendants admit this court may exercise "pendant jurisdiction" over claims arising under Illinois law.  Defendants deny that they violated any Illinois law giving rise to jurisdiction and deny the remaining allegations of paragraph 4.  Further answering, Defendants state that the claims under 775 ILCS 5/1-101 et seq. were dismissed.

5.        Plaintiff has exhausted her administrative remedy.

**Answer:**        Defendants admit only that on August 4, 2006, plaintiff filed a Charge with the EEOC asserting discrimination based on race, national origin, retaliation and disability.  Defendants deny the remaining allegations in paragraph 5.

## II. PARTIES

1.        Plaintiff, Marlaina Easton ("Marlaina") is an Afro-American/Hispanic female, whose national origin is Puerto Rico and who, at all times relevant hereto, suffered from Multiple Sclerosis ("MS").  She is a United States citizen and resides in the State of Illinois.

**Answer:**        Defendants admit that Marlaina is an Afro-American female and a U.S. Citizen.  The College and the Board admit that Marlaina resides in the State of Illinois.  Dr. Kartje has insufficient knowledge or information to form a belief to the truth of where Marlaina currently resides.  Defendants have insufficient knowledge or information to form a belief as to the truth of the remaining allegations in Section II paragraph 1.

2        Marlaina has been employed as an English professor with the College of Lake County ("College") since June 2001.

3

**Answer:**        Denied.

3.        The College is comprised of a faculty and students from primarily Caucasian upper middle class backgrounds.

**Answer:**        Denied

4.        Defendant ("College"), is a state owned and operated college in Grayslake, Illinois.

**Answer:**        Admitted.

5.        Defendant, Dr. Jean Kartje ("Dean"), on or about the time complained of, was the Dean of Communication Arts at the College and was the direct supervisor of Marlaina.

**Answer:**        Defendants admit that Dr. Kartje was Dean from August 2004 through June 2007 and that in that capacity, she was Marlaina's supervisor.  Defendants deny the remaining allegations in Section II paragraph 5.

6.        Defendants, Board of Trustees, College of Lake County ("Board"), is the governing body of the College.

**Answer:**        Admitted.

### III.  FACTS

7.        On or about 2001, Marlaina was hired by the College as an English Professor in the Communications Arts Division.

**Answer:**        Denied.  Further answering Defendants state that Marlaina was hired as a part time non-tenured English Instructor in Communication Arts, Humanities & Fine Arts, effective June 10, 2002.

8.        Between 2001 and 2003, the Dean of Communication Arts was Dr. Sandria Rodriguez ("Sandria") who had hired Marlaina.

4

**Answer:**        Defendants admit that Dr. Sandria Rodriguez was Dean of Communication Arts, Humanities & Fine Arts in this period and deny the remaining allegations in paragraph 8.

9.        During the period between 2001 and 2003, Marlaina had excellent evaluations, peer reviews and student evaluations, and was recognized for her substantial efforts in working with Developmental students  of color and students with disabilities.

**Answer:**        Denied.

10.        Marlaina, during this period, worked with faculty members to improve their own classes concerning these students and taught summer school classes where she was able to teach and influence students.

**Answer:**        Denied.

11.        During this period, Marlaina, notwithstanding her MS disability, which she suffered from since [sic] childhood, was able to function, [sic] as a productive and energetic member of the college teaching community.

**Answer:**        Defendants have insufficient knowledge with which to form a belief as to the truth of the allegation that Marlaina had MS from childhood or how she functioned prior to her hire. Defendants deny the allegation that her MS constituted a disability.  Defendants admit that in the period immediately after her hire, Marlaina functioned as a  productive faculty member.

12.        During this period, Marlaina was able to keep the effects of her MS illness under control and at no time exceeded the permitted sick of absent days allowed under her contract.

**Answer:**        Defendants have insufficient knowledge with which to form a belief as to truth of the allegations in paragraph 12.

13.        During this period, Marlaina was on a tenure track which she was scheduled to

achieve during the year 2004.

    **Answer:**    Defendants admit that Marlaina sought tenure and denies the remaining allegations in paragraph 13.  Further answering, Marlaina was granted tenure effective Fall Semester 2005.

    14.    On or about August 2004, Defendant Dean, [sic] was employed by the College as Dean of the Communications Art Division and as such was placed in a direct supervisory and administrative control of Marlaina.

    **Answer:**    Defendants admit that Dr. Kartje was Dean on or about August 2004 and that in that capacity she supervised Marlaina.  Defendants deny the remaining allegations in paragraph 14.

    15.    During the period between August 2004 and July 2006, when Defendant, Dean [sic] was terminated as an employee of the College, said Dean engaged in the following acts of harassment and discrimination against Marlaina without any cause or justification:

    a.    She docked Marlaina's pay without cause or justification for a justifiable absence while allowing  white, non-disabled teachers in her division to have absences without docking their pay;

    b.    She constantly accused Marlaina of excessive absenteeism, even though Marlaina's absent days were not excessive by any standards of the College or Marlaina's contract with the College.

    c.    She denied Marlaina a column movement and reimbursement for her fall Ph.D classes on the unfounded representation that Marlaina delivered her paperwork to her too slowly, while white, non-disabled teachers in her

department had not been unreasonably denied such benefits.

d.    Even though she conducted observation meetings of Marlaina's Developmental English classes, she refused to communicate her observations of Marlaina's performance in those classes to Marlaina as required, while white, non-disabled teachers in her department were not similarly ignored.

e.    When Marlaina expressed discomfort to the Dean and the unreasonable manner in which she was being treated, the Dean stated "you are about as comfortable as you should be."  And that "you are the type of teacher who remains a part-timer and is not tenured."  And that "you are an excellent teacher but you don't fit into the College of Lake County Community."  She further falsely accused Marlaina of not being an active member of the College community.

f.    She publicly posted a confidential memo wherein the above stated matters were discussed in an obvious attempt to label and stigmatize Marlaina as a "problem" teacher.

g.    She required Marlaina to notify her if Marlaina was going to be out of her office for more than 15 minutes, while white, non-disabled teachers in her department had no such restrictions.

h.    She mandated multiple meetings with Marlaina to "check up" on Marlaina, while white, non-disabled teachers in her department were not subject to such scrutiny.

i.    She chastised Marlaina about her absence due to MS and told Marlaina that

she of all people has no right to require her students to comply with an attendance policy because she has an illness that makes her absent "all of the time".

j.      She wrote memos to the College administration falsely representing the number of Marlaina's absences.

k.      On the basis of said false absenteeism reported to the College Vice President and Human Resources Director, she restricted Marlaina's ability to teach during the summer and Marlaina's ability to teach Developmental Courses by confining her teaching to the internet where she was not allowed to have personal contact with students, where no such false reports were made about white, non-disabled teachers in her department, and no such restrictions were imposed.

l.      Early in her reign as Dean, she told Marlaina that the student make up of the Developmental students, predominately students of color with disabilities, were not worthy of her efforts or of a full time instructor.

**Answer:**      Defendants deny every allegation in paragraph 15, a-l inclusive.

16.     Based upon the disparate treatment and upon the derogatory comments made by Defendant Dean, [sic] relative to Marlaina's disability and negative attitude towards disabled persons and persons of color, Marlaina reasonably believes that Defendant Dean discriminated against her because she was non-Caucasian and disabled.

**Answer:**      Denied.

17.     On numerous occasions between August 2003 and July 2006, Marlaina reported the

8

outrageous and discriminating conduct of Defendant Dean to the Defendant College, by informing the Board, its Vice-President and its Head of Human Resources, but no action was taken to eliminate said conduct.

**Answer:**    Denied.

18.    After Marlaina reported said conduct, Dean's treatment of Marlaina progressively worsened in apparent retaliation from Marlaina having made such complaints.

**Answer:**    Denied.

19.    Between August 2004 and 2006 as a direct and proximate result of the outrageous and discriminatory conduct of Defendant Dean, and the failure of the Defendant College to control said Defendant Dean, Marlaina's medical condition deteriorated.

**Answer:**    Denied.

20.    During this period, Marlaina's disability began to manifest the following symptoms:

A.    She suffered from diagnosed bouts of anxiety which exacerbated her MS disability, for which she was prescribed medication.

B.    She suffered numerous physical symptoms, including tightening sensations in her chest, canker sores in her mouth, inability to hold food down, rapid weight loss, general numbness in her body, visual impairment including loss of peripheral vision, and loss in some of her hearing.

**Answer:**    Defendants have insufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 20, A and B inclusive.

21.    On or about August 2006, Marlaina was forced, by reason of worsening medical

9

condition and upon the advice and certification of her physician, to take a one year medical leave of absence.

**Answer:**     Defendants admit that Marlaina requested and receive a leave of absence beginning on or about August 19, 2006  and deny the remaining allegations in paragraph 21.

22.     Defendant Dean's employment was terminated from the College in July, 2007.

**Answer:**     Denied.  Further answering Defendants state that Dr. Katje resigned.

23.     In July 2007, Marlaina returned to her regular employment with the College, free from the outrageous and unreasonable discrimination and harassment of Defendant Dean, and has, since said return, not suffered any of the symptoms outlined above.

**Answer:**     Defendants admit that Marlaina returned to her "regular employment" in July 2007 and that she was not discriminated against or harassed.  Defendants have insufficient knowledge or information to form a belief as to the truth of the allegations regarding her symptoms and deny the remaining allegations in paragraph 23.

24.     On August 1, 2006 Marlaina filed a Complaint with the Equal Employment Opportunity Commission alleging that the College discriminated against her because of her race, national origin and disability and that it retaliated against her.

**Answer:**     Defendants admit that Marlaina filed a Charge of Discrimination with the Equal Employment Opportunity Commission, deny the Charge was filed on August 1, 2006, admit that the boxes in the Charge are checked for race, national origin, disability and retaliation and deny that there are allegations in the Charge that support these claims.

25.     On August 3, 2007, Marlaina received an Equal Employment Opportunity Commission notice of her right to sue and commenced this action within ninety (90) days thereof.

**Answer:** Defendants admit that the Equal Employment Opportunity Commission issued a Dismissal and Notice of Rights dated July 31, 2007. Defendants have insufficient knowledge or information to form a belief as to the truth of the allegation as to when Marlaina received the Dismissal and Notice of Right to Sue and admit that the Complaint was filed within 90 days of August 3, 2007.

26.    At all times, Defendants Dean and College, its officers, agents and employees, adopted a policy of violating Marlaina's rights through their willful and wrongful harassment, discrimination, retaliation and failure to act to prevent further ongoing acts of said conduct after notification.

**Answer:** Denied.

27.    As a result of Defendants' acts, Marlaina suffered economic and other losses and has suffered extreme humiliation, embarrassment and mental distress.

**Answer:** Denied.

## VIOLATIONS OF LAW

## COUNT I

28.    Plaintiff alleges Paragraphs 7 through 27 as for [sic] this Paragraph 28.

**Answer:** Defendants incorporate and reallege their answers to paragraphs 7 through 27 as their answer to paragraph 28.

29.    The actions of Defendant, Dean, in punishing, humiliating, harassing and depriving Plaintiff of earned employment benefits and opportunity based upon false representations to College officials, while making disparaging comments relative to her disability, and while treating white, non-disabled teachers in a totally opposite manner, was done with malice and without any

justification whatsoever.

**Answer:**    Denied.

30.    This conduct constituted discrimination based upon race, national origin, disability and retaliation, and, as such, denied Plaintiff equal protection and due process of the U.S. and State Constitutions and the Federal and State laws set forth herein.

**Answer:**    Denied.

31.    As a result of Defendant Dean's action, Plaintiff suffered economic and other losses including extreme humiliation, embarrassment and mental distress which worsened her disability resulting in her being unable to engage in her profession and becoming seriously ill.

**Answer:**    Denied.

## COUNT II

32.    Plaintiff realleges Paragraphs 7 through 31 as for [sic] this Paragraph 32.

**Answer:**    Defendants incorporate and reallege their answers to paragraphs 7 through 31 as their answer to paragraph 32.

33.    The failure of the College and its Board to control, terminate and otherwise prevent the blatant and discriminatory conduct of its Dean from damaging one of its finest teachers after having been placed on notice of such conduct, constitutes the adoption, ratification, and approval of such discriminatory acts as a custom and policy of the College and its governing Board, and renders the College and its Board fully accountable to Plaintiff for denial of Plaintiff's equal protection and due process under the U.S. and State laws set forth herein.

**Answer:**    Denied.

## SUPPLEMENTAL AMENDMENT

S-1.     Between August 1, 2006, when Marlaina filed a Complaint with the Equal Employment Opportunity Commission (EEOC), and July 2007, when Defendant Dean (Dr. Jean Kartje) was terminated from the College, the EEOC investigated the Complaint of Marlaina.  In this respect [sic] amends paragraph 15 of her Complaint to change the scriviners error as to the date the Dean was terminated from "July 2006" to July 2007.

**Answer:**        Defendants deny that Marlaina filed a Complaint with the EEOC on August 1, 2006 and they deny that Dr. Kartje's employment was terminated in July 2007.

S-2.     On several occasions during that period Marlaina informed the EEOC of her complaints against Defendant, Dean which complaints are set forth in paragraph 15 of this Complaint.

**Answer:**        Defendants  have insufficient knowledge or information to form a belief as to the truth of the allegation of what Marlaina told the EEOC and deny the complaints set forth in paragraph 15.

S-3.     On information and belief, during the period between August 1, 2006 and July 2007, the Dean was informed by the College of Marlaina's complaint against her and had the opportunity to participate in the conciliation procedures before the EEOC.

**Answer:**        Denied.

S-4.     Counts I and II are amended to reallege paragraphs S-1, S-2 and S-3.

**Answer:**        This allegation does not state facts that require a response.  To the extent a response is required, Defendants incorporate their answers to S-1, S-2 and S-3 above.  Defendants further note that this is not the correct procedure to amend a complaint.

13

## AFFIRMATIVE DEFENSES

As their Affirmative Defenses, Defendants state as follows:

1.    All claims alleged in the Complaint that are outside the scope of the Charge, including but not limited to allegations of a hostile environment, are barred.

2.    To the extent the Section 1983 claim is based on events arising more than two years before the Complaint was filed, it is time barred.[2]

3.    The 1983 claim must be dismissed as to the Board because the Board is not a person under that statute.

4.    To the extent Plaintiff has alleged a viable Section 1983 claim, Defendants are entitled to qualified immunity in connection with that claim.

5.    The Title VII and ADA claims against Dr. Kartje must be dismissed because she is not an "employer" as defined by those statutes.

6.    Plaintiff failed to plead the requisite facts to support a claim for punitive damages. In the alternative, Defendants may not be liable for punitive damages due to their good faith efforts to comply with the anti-discrimination laws.

7.    On information and belief, Plaintiff failed to mitigate her damages.

8.    To the extent Plaintiff proves that Defendants took a tangible adverse employment action against her, in part or on account of any protected status, Defendants would have taken the same action in the absence of any impermissible motivating factor and therefore any relief Plaintiff may be entitled to is limited by law.

---

[2]  The court has already dismissed claims under Title VII and the ADA that arose more than 300 days before the Charge was filed.

9.      To the extent Plaintiff has alleged a viable hostile environment claim, Defendants exercised reasonable care to prevent and promptly correct any alleged harassment and Plaintiff unreasonably failed to take advantage of any preventable or corrective opportunities Defendants provided or to otherwise avoid harm.

WHEREFORE, Defendants College of Lake County, Dr. Jean Kartje and Board of Trustees of the College of Lake County request that the Complaint and Supplemental Amendment to Plaintiff's Complaint be dismissed in their entirety, that they be awarded their attorney's fees and costs and any other relief the Court deems just.

s/Lynn U. Thorpe
Lynn U. Thorpe
35 East Wacker Drive
Suite 500
Chicago, IL 60601
Phone 312- 236-0475
Fax     312-236-1750
E-mail:  lynn_thorpe@gshllp.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 25, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the following: N/A and I certify that I have mailed by United States Postal Service the document to the following non CM/ECF participants:

Robert V. Gildo
Law Offices of Robert V. Gildo
120 North Hale
3rd Floor
Wheaton, IL 60187


<u>s/Lynn U. Thorpe</u>

Lynn U. Thorpe
35 East Wacker Drive
Suite 500
Chicago, IL 60601

Phone 312- 236-0475
Fax 312-236-1750
E-mail: lynn_thorpe@gshllp.com